UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| STEPHEN P. SIMMONS, | Civil Action No. 09-1677 (SDW) |
| Plaintiff, |  |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, |  |
|  | March 8, 2010 |
| Defendant. |  |

**WIGENTON**, District Judge.

Before the Court is Plaintiff Stephen P. Simmons' ("Simmons" or "Plaintiff") appeal of the Commissioner of Social Security's (the "Commissioner") final decision that he was ineligible for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 421 *et. seq.* The central issues are whether the Administrative Law Judge ("ALJ") erred in determining Plaintiff did not meet a listed impairment and in failing to include questions regarding Plaintiff's mental impairments in the hypothetical questions submitted to the vocational expert.

The appeal is decided without oral argument pursuant to Local Civil Rule 9.1(b). The Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, the Court VACATES and REMANDS the Commissioner's decision.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Stephen P. Simmons filed a claim with the Commissioner of Social Security for disability insurance benefits on July 13, 2004 for the period beginning on August 26, 2000 and ending on December 31, 2001. In order to receive disability insurance benefits, Simmons must establish he was disabled during that period. He claims both mental and physical disabilities under sections 216(i) and 223(d) of the Act. His claim was initially denied on March 14, 2005, and was denied again on reconsideration on April 29, 2005.

Simmons is 56 years old and has had two years of college education. (Transcript 30 (hereinafter "Tr.").) He was a salesman in the paint and screen printing field until 1996, when the company he worked for closed. (Tr. 30.) In the 1980's, Simmons was hospitalized multiple times for clinical depression and attempted suicide.[1] (Tr. 35-36.) He has a history of deviant sexual behavior and has been convicted of multiple sexual offenses.[2] (Tr. 1001, 1125-26.) Prior to the instant action, Simmons had collected Social Security Disability Benefits for depression from approximately November 1981 until March 1993. (Tr. 19, 28, 36-37, 55-56.)

From September 24, 1997 until November 27, 2001, Simmons was incarcerated in Mid State Correctional Facility and Suffolk County Correctional Facility for criminal sexual conduct, second and third degree endangering the welfare of a minor, sexual assault and possession of a sexual performance by a child. (Tr. 41, 1104.) Upon his release, Simmons was involuntarily committed to the Department of Human Service's Special Treatment Unit, where he presently remains. (Tr. 42, 318, 820.) Psychological evaluations in 2001 and 2002 demonstrated there was a high risk he would reoffend and it was therefore recommended that he remain in the

---

[1] Simmons attempted suicide thirteen times. (Tr. 823.)
[2] In 1978, Simmons was charged with sexual battery and lewd and lascivious acts in the presence of a child. (Tr. 1126.) He was convicted of the latter charge and served three years probation. (Tr. 1126.) During his probation, he reoffended by having sexual relations with minors. (Tr. 1101-1102.) In 1984, Simmons was convicted of second-degree sodomy. (Tr. 1126.) He was incarcerated until 1987 and maxed out on parole in 1988. (Tr. 1126.)

custody of the state.  Specifically, Robert Lathey, Ph.D. evaluated Simmons on July 6, 2001 and noted that Simmons showed "no remorse" for his crimes, was "negative, hostile, and defensive ... arrogant, self-centered and highly suspicious of the motives of others. . . . and he is an untreated sex offender at risk to reoffend."  (Tr. 821-22.)  On December 11, 2001, Michael R. McAllister, DO ("McAllister"), diagnosed Simmons with pedophilia, depression and personality disorder.[3] (Tr. 1122-23.)   In both 2001 and 2002, McAllister recommended "continued sexual offender treatment, custody and care . . ." and concluded that Simmons "suffers mental abnormalities as well as a personality disorder . . . which predispose him to further acts of sexual violence."  (Tr. 1111, 1123.)   On December 10, 2001, Donna LoBiondo, Ph.D. ("LoBiondo"), diagnosed Simmons with pedophilia, depressive disorder and personality disorder with narcissistic and antisocial traits.[4]  (Tr. 1117.)   LoBiondo concluded that he was "at high risk to sexually reoffend" and was "in need of sex offender treatment at the Special Treatment Unit."[5]  (Tr. 1117.)[6]

On August 26, 2000, Simmons was admitted to Stony Brook Hospital suffering from a heart attack.  (Tr. 184-225.)   He was treated and released on September 1, 2000 in stable condition.  (Tr. 184-225.)  In July of 2003, Simmons began cardiac consultations at St. Francis Medical Center.  (Tr. 230-232.)  He was admitted to St. Francis Medical Center on November 24, 2003 for elective cardiac catheterization after an abnormal echocardiogram.  (Tr. 241-243.)

---

[3] McAllister specifically diagnosed Simmons with "Axis I Paraphilia, NOS with features of pedophilia. History of Major Depression (Predominantly characterologic). History of Quaalude, marijuana, ecstasy and cocaine abuse; Axis II Personality Disorder, NOS; Axis III Atherosclerotic cardiovascular disease. Hypertension. Hypercholesteromia; Axis IV Moderate: Problems with the legal system; Axis V 65." (Tr. 1122-23.)
[4] LoBiondo specifically diagnosed Simmons with "Axis I: Pedophilia, sexually attracted to boys, History of Depressive Disorder with Suicidal Ideation, R/O Substance Abuse; Axis II: Personality Disorder NOS with Narcissistic and Antisocial Traits." (Tr. 1117.)
[5] On November 29, 2001, during his commitment, a doctor cleared Simmons for employment as a food service worker. (Tr. 819.) However, it is unclear from the record at what point Simmons actually became employed.
[6] Simmons also has a history of nephritis, herniated disc, spinal fusion, chronic ischemic heart disease, hypertension, irritable colon and diabetes. (Tr. 318, 828-30.)

The procedure revealed that Plaintiff had coronary artery disease. (Tr. 241-243.) As a result, Simmons underwent triple bypass surgery on November 26, 2003 and was discharged on December 7, 2003. (Tr. 241-243.)

Simmons filed an application for Social Security Disability Benefits on July 13, 2004. (Tr. 13.) He alleged disability due to "2 heart attacks – blockage in main artery . . . damage to left ventrical diabetes, high blood pressure, high cholesterol-non specific and mental disorder." (Tr. 64.) His application was denied initially on March 14, 2005, and again on reconsideration on April 29, 2005. (Tr. 63-73.) Simmons then filed for a hearing before the ALJ. (Tr. 76-77.) The hearing was held on July 18, 2007. (Tr. 24-60.)

Written interrogatories were submitted from internal medicine expert Martin A. Fechner ("Fechner") and vocational expert, Rocco Meola ("Meola"). (Tr. 1353-1362, 1365-1369.) Fechner found that prior to Simmons' health worsening in 2003, his heart condition did not meet a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16, 1354-1361.) Meola, on the other hand, determined that Simmons' physical limitations from August 26, 2000 until early 2003 prevented him from continuing his past relevant work. (Tr. 1368.) Nevertheless, Meola stated that during this period, other work existed in the national and regional economy that a person of Simmons' physical limitations could perform. (Tr. 1368.) An orthopedist reviewed Simmons' medical file and concluded that Simmons had no orthopedic disability, although he refrained from commenting on Simmons' psychological, psychiatric or cardiac impairments. (Tr. 1363-1364.)

On January 18, 2008, the ALJ determined that Simmons "was not disabled under sections 216(i) and 223(d) of the Social Security Act" between August 26, 2000 and December 31, 2001. (Tr. 23.) While Simmons' coronary artery disease and personality disorder were determined to

be "severe" impairments, the ALJ held that these impairments did not meet a listed impairment under 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (Tr. 15-17.)  Since the ALJ determined that there were a significant number of jobs available in the national economy that a person of Simmons' physical and mental capacities could perform, she denied Simmons' claim for Disability Insurance Benefits.  (Tr. 21-23.)  Simmons requested a review of the decision, (Tr. 8-9), and his request was denied on February 26, 2009.  (Tr. 5.)  Simmons then filed a complaint in this Court appealing the Commissioner's decision to deny him disability benefits for physical and mental disability.  (Pl.'s Compl. ¶ 3.)  Simmons alleges a lack of substantial evidence supporting the Commissioner's decision and requests additional evidence be taken into account on his behalf. (*Id*. ¶ 9, (b).)

## APPLICABLE LEGAL STANDARDS

To establish disability under the Social Security Act, Simmons must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months.  42 U.S.C. § 423(d)(1)(A). This physical or mental impairment must be so severe as to render Simmons "not only unable to do his previous work, but [unable], considering his age, education, and work experience, [to] engage in any other kind of  substantial gainful work which exists in the national economy . . ." § 423(d)(2)(A).  The Social Security Administration has promulgated a five-step evaluation process to determine whether an individual is entitled to Social Security disability benefits.  *See* 20 C.F.R. § 404.1520.

In step one, the ALJ decides whether the claimant is currently engaged in substantial gainful activity.  If the claimant is engaged in substantial gainful activity, the claimant is not eligible for disability benefits and the ALJ's inquiry ends.  § 404.1520(a).  If the claimant is not

5

engaged in such activity, then in step two the ALJ determines whether the claimant is suffering from a severe impairment. If the impairment is not severe, the claimant cannot qualify for disability benefits and the ALJ's inquiry ends. § 404.1520(c). If the impairment is severe, then in step three the ALJ evaluates whether the evidence establishes that the claimant suffers from a listed impairment. § 404.1520(d). If the claimant suffers from a listed impairment, then the claimant is automatically entitled to disability benefits and the ALJ's inquiry ends. *Id.* If the claimant does not suffer such an impairment, then in step four the ALJ reviews whether the claimant retains the "residual functional capacity" to perform his past relevant work. § 404.1520(e). If the claimant can perform their past relevant work, the claimant is not eligible for disability benefits and the ALJ's inquiry ends. *Id.* If claimant cannot perform such work, then in step five the ALJ considers whether work exists in significant numbers in the national economy that the claimant can perform given his medical impairments, age, education, past work experience, and "residual functional capacity." § 404.1520(f). If such work does exist, the claimant is not eligible for disability benefits. *Id.*

In evaluating the ALJ's decision, we must affirm if the decision is supported by "substantial evidence." 42 U.S.C. § 405(g); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988) (the standard of review is "whether there is substantial evidence in the record" to support the ALJ's decision). Substantial evidence is "more than a mere scintilla" and is generally thought of as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This court is required to give substantial weight and deference to the ALJ's findings. *Scott v. Astrue*, 297 Fed. App'x 126, 128 (3d Cir. 2008). However, the evaluation of the presence of substantial evidence is not merely a quantitative

evaluation, but a qualitative one, "without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."  *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).  Furthermore, even where substantial evidence is found to exist, this Court may still review the ALJ's decision to determine if it was based upon proper legal standards.  *Curtin v. Harris*, 508 F.Supp. 791, 795 (D.N.J. 1981) (holding that an ALJ's undue emphasis on certain record evidence was in error because it was based on an "erroneous legal standard").

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits."  *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F.Supp. 1127, 1131 (E.D. Pa. 1976)).  But, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits."  *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984).

## DISCUSSION

Simmons claims the ALJ's decision is not supported by substantial evidence.  (Pl.'s Compl. ¶ 9.)  He argues, among other things, that the ALJ improperly evaluated the medical evidence in deciding he did not meet a listed impairment; and that the Commissioner erred in failing to include plaintiff's mental limitations in a hypothetical interrogatory submitted to the vocational expert.  (Pl.'s Br. 23, 28.)

Specifically, he claims that he meets the criteria of Listing 12.04 (Affective Disorders) and Listing 12.08 (Personality Disorders) and that his medically determinable mental

impairments include "personality disorder, impulse control problems, anger problems, and a history of depression and substance abuse." (Pl.'s Br. 23, 27; Tr. 135.)

**Listing 12.04** states:

> 12.04: Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A. Medically documented persistence, either continuous or intermittent, or one of the following:
>     1. Depressive syndrome characterized by at least four of the following: a. Anhedonia or pervasive loss of interest in almost all activities; or b. Appetite disturbance with change in weight; or c. Sleep disturbance; or d. Psychomotor agitation or retardation; or e. Decreased energy; or f. Feelings of guilt or worthlessness; or g. Difficulty concentrating or thinking; or h. Thoughts of suicide; or i. Hallucinations, delusions or paranoid thinking; or
>     2. Manic syndrome characterized by at least three of the following: a. Hyperactivity; or b. Pressure of speech; or c. Flight of ideas; or d. Inflated self-esteem; or e. Decreased need for sleep; or f. Easy distractibility; or g. Involvement in activities that have a high probability of painful consequences which are not recognized; or h. Hallucinations, delusions or paranoid thinking; or
>     3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);
>
> AND
>
> B. Resulting in at least two of the following:
>     1. Marked restriction of activities of daily living; or
>     2. Marked difficulties in maintaining social functioning; or
>     3. Marked difficulties in maintaining concentration, persistence, or pace; or
>     4. Repeated episodes of decompensation, each of extended duration;
>
> OR
>
> C. Medically documented history of a chronic affective disorder of at least two years duration that has caused more than a minimal limitation of ability to do

>basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>>1. Repeated episodes of decompensation, each of extended duration; or
>>2. A residual disease process that has resulted in such a marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>>3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.04.

**Listing 12.08** states:

>A personality disorder exists when personality traits are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress. Characteristic features are typical of the individual's long term functioning and are not limited to discrete episodes of illness.
>
>The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
>
>A. Deeply ingrained, maladaptive patterns of behavior associated with one of the following:
>>1. Seclusiveness or autistic thinking; or
>>2. Pathologically inappropriate suspiciousness or hostility; or
>>3. Oddities of thought, perception, speech and behavior; or
>>4. Persistent disturbances of mood or affect; or
>>5. Pathological dependence, passivity, or aggressivity; or
>>6. Intense and unstable interpersonal relationships and impulsive and damaging behavior;
>
>>AND
>
>B. Resulting in at least two of the following:
>>1. Marked restriction of activities of daily living; or
>>2. Marked difficulties in maintaining social functioning; or
>>3. Marked difficulties in maintaining concentration, persistence, or pace; or
>>4. repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.08.

While, as discussed below, this Court is troubled by the ALJ's analysis of whether Plaintiff met Listing 12.08, it does not find it necessary, at this point, to vacate the ALJ's decision as related to that analysis. This Court, however, does find that the ALJ erred in her decision that Plaintiff did not meet the requirements of Listing 12.04 and in her reliance on the hypothetical interrogatories.

1. **The ALJ Erred In Her Determination That Simmons Did Not Meet the Requirements of Listing 12.04.**

In determining whether Simmons meets the requirements of a listed impairment, the ALJ must properly analyze the entire record so that the reviewing court can determine whether the decision was supported by substantial evidence. *Baerga v. Richardson*, 500 F.2d 309, 312-13 (3d Cir. 1974) (holding that ALJ opinion which merely stated supporting evidence without analyzing contradictory evidence or explaining her reasoning and conclusions was insufficient); *see also Cotter v. Harris*, 642 F.2d 700, 704-5 (3d Cir. 1981) ("an administrative decision should be accompanied by a clear and satisfactory explication of the basis on which it rests. . . . [so] the appellate court [can] perform its statutory function of judicial review"). The analysis must include specific findings of fact necessary to support the ALJ's conclusion and the ALJ must "scrutinize the record as a whole." *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (quoting *Arnold v. Sec'y of HEW*, 567 F.2d 258, 259 (4th Cir. 1977)); *see also Dobrowolsky*, 606 F.2d at 406-7 (the ALJ must take "extra care" in "weighing all the evidence").

   a. **The ALJ Failed to Identify Listing 12.04.**

In providing the appropriate analysis, it is the ALJ's duty to "identify the relevant listed impairment[s]." *Torres v. Comm'r of Social Sec.*, 279 F. App'x 149, 151 (3d Cir. 2008) (quoting *Burnett*, 220 F.3d at 120 n.2); *see also Smith v. Barnhart*, 54 F. App'x 83, 86 (3d Cir. 2002)) (remanding in part because ALJ "failed to identify the specific listing or listings he utilized for

comparing the appellant's impairments"). A mere conclusion that an individual does not meet a listed impairment without a discussion of the evidence, an explanation of the reasoning or an identification of relevant listed impairments is beyond judicial review and must be remanded. *Burnett*, 220 F.3d at 119-20 (vacating and remanding ALJ's decision for failing to identify listed impairment, discussing any pertinent evidence or explaining his reasoning).

In this case, the ALJ fails to reference Listing 12.04 during any point in her decision. Instead, the ALJ analyzes Simmons' personality disorder pursuant to Listing 12.08 and then explains, in a rather conclusory fashion that "[a]lthough the claimant had additional medically determinable impairments, they were not 'severe' as defined in the Social Security Administration regulations, let alone components of a listing-level impairment, based upon the discussion below." (Tr. 17.) However, failure to identify a listed requirement, by itself, does not necessitate remand. *Jones v. Banhart*, 364 F.3d 501, 504-5 (3d Cir. 2004) (holding that ALJ's decision, "read as a whole, illustrates" that ALJ considered the factors in the unspecified listed impairment at issue); *see also Scatorchia v. Comm'r of Soc. Sec.*, 137 F. App'x 468, 470-71 (3d Cir. 2005) (explaining that the Third Circuit narrowed *Burnett* to mean ALJ does not need to identify the relevant listing so long as he performs proper analysis of evidence); *Scuderi v. Comm'r of Soc. Sec.*, 302 F. App'x 88, 89-90 (3d Cir. 2008) (failure to identify relevant Listing is not sufficient cause for remand); *Brownstein v. Banhart*, No. 05-2257, 2009 WL 3584458, at *5 (D.N.J. 2009) (quoting *Jones*, 364 F.3d at 505) (holding that *Burnett*'s function "is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review" and does not require ALJ to identify the listed impairment).

Nevertheless, the ALJ must "clearly and fully evaluat[e] and explain[] the medical evidence set forth in the record." *Scatorchia*, 137 F. App'x at 471. The analysis must include

specific findings of fact necessary to support the ALJ's conclusion. *Gober*, 574 F.2d at 776 (holding that an ALJ must reveiw all evidence, scrutinize the record as a whole and explain her reasoning); *see also Dobrowolsky*, 606 F.2d at 406-7 (ALJ must take "extra care . . . in *explicitly* weighing all the evidence") (emphasis added); *Cotter*, 642 F.2d at 704-5 (holding that ALJ must clearly explain his reasoning in order to allow a reviewing court to perform an appropriate judicial review).

### b. The ALJ Failed To Properly Evaluate Whether Simmons Meets the Criteria Of Listing 12.04 Section C.

As noted above, the ALJ failed to identify Listing 12.04 at any point in her decision. The Commissioner, however, argues that the ALJ's discussion of Simmons' disability claims, generally, and her analysis of Listing 12.08, specifically, incorporated an evaluation of whether Simmons' disabilities met Listing 12.04. This Court disagrees.

To meet Listing 12.08, Plaintiff has to show he meets the criteria of *both* sections 12.08 A and B. On the other hand, Plaintiff can satisfy the requirements of Listing 12.04 in two different ways. Specifically, Plaintiff can either prove he meets the criteria of 12.04, sections A and B *or* alternatively he can establish he meets the conditions in 12.04, Section C. Significantly, sections B of both Listings 12.04 and 12.08 set forth exactly the same criteria – the claimant must show: (1) Marked restriction of activities of daily living; or (2) Marked difficulties in maintaining social functioning; or (3) Marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.08. In her decision, the ALJ analyzed Plaintiff's impairments to determine that the Plaintiff did not meet the individual requirements of 12.08 B. (Tr. 21.) Accordingly, once the ALJ determined that Plaintiff did not meet 12.08 B, any analysis

of 12.08 A became unnecessary because Plaintiff would have had to meet both sections A *and* B under Listing 12.08 to state a valid claim.[7]

The Commissioner would like us to extend that same logic to our analysis under 12.04 because 12.04 B and 12.08 B are identical. However, unlike Listing 12.08, which only has two sections (A and B), Listing 12.04 has a third section – Section C. If a person meets the criteria of 12.04 C, then they can meet that entire Listing, regardless of whether they meet the criteria of 12.04 A and B. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04 ("[t]he required level of severity for these disorders is met when the requirements in both A and B are satisfied, *or* when the requirements in C are satisfied") (emphasis added). Consequently, we must conduct a review to determine if Plaintiff's impairments meet the requirements of 12.04 C.

To meet the requirements for 12.04 C, Plaintiff must prove he had a "chronic affective disorder" - lasting two years and attenuated by medication or psychosocial support -causing "more than a minimal limitation" in the claimant's ability to do basis work related activities along with one of the following: 1. repeated episodes of decompensation; 2. marginal adjustment; or 3. inability to function outside a highly supportive living arrangement. Simmons argues that he meets each and every requirement of this section. (Pl.'s Br. 24.); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04.

---

[7] The Court notes that Plaintiff also appealed the ALJ's decision at step 3 as related to the ALJ's analysis of section 12.08; however, because the Court finds that the Plaintiff could meet the requirements of 12.04, section C – a Listing the ALJ failed to mention at all - a full review of the ALJ's analysis of section 12.08 is unnecessary at this time. The Court, however, will note that the Court has serious concerns as to whether or not the ALJ's decision that Plaintiff did not meet the requirements of 12.08B was supported by substantial evidence. *See Baerga*, 500 F.2d at 312-13 (ALJ opinion must properly analyze the entire record to be considered supported by substantial evidence). Plaintiff is a repeat sex offender and received Social Security Disability Benefits for well over ten years as a result of his mental impairments. (Tr. 19, 28, 36-37, 55-56.) Additionally, Plaintiff has been committed to a special treatment facility for sex offenders since November 27, 2001. (Tr. 1125-29.) Consequently, the ALJ's position that Plaintiff did not have marked restriction of activities of daily living, OR marked difficulties in maintaining social functioning, OR marked difficulties in maintaining concentration, persistence, or pace; OR as discussed below, repeated episodes of decompensation – as necessitated by 12.08 B – is suspect. On remand, the Court encourages the ALJ to fully review the record and Plaintiff's arguments before making a final decision. *See Cotter*, 642 F.2d at 706 n.9 (holding that, in explaining his reasoning, the ALJ must consider all relevant evidence).

In her analysis of 12.08, the ALJ held that even though Simmons might have a chronic affective disorder lasting more than two years (in this case, depression and/or personality disorder and/or pedophilia),[8] it did not significantly limit his ability to sustain gainful employment.[9] (Tr. 19, 21.) Additionally, the ALJ held that Plaintiff had no episodes of decompensation.[10] (Tr. 21.) The ALJ's decision is not supported by the record.

First, the ALJ addressed the decompensation criteria simply by stating "there were no episodes of decompensation." *(*Tr. 21.) Signficantly, the ALJ failed to support her conclusion with any evidence. It is well settled that a mere conclusion without an explanation is an inadequate analysis and must be remanded. *Burnett*, 220 F.3d at 119 (remanding an ALJ's decision for giving an opinion in a single, conclusory sentence). Additionally, the Administrative Record contains significant evidence of decompensation. "Episodes of decompensation may be inferred from . . . documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house or a highly structured and directing household) . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(4). In this case, Plaintiff has been hospitalized and incarcerated for a large part of his adult life. The, ALJ argues, however that Plaintiff's incarceration "did not result directly from medically determinable impairments. Rather, they resulted from punishment imposed for criminal activity . . ." (Tr. 21.) Simmons, on the other hand, argues that his current commitment is not due to his past crimes, but instead due to his mental impairment. (Pl.'s Reply Br. 6.) The record supports Simmons' argument. The listed reasons for Simmons' psychiatric commitment included, among

---

[8] The ALJ notes that Simmons has "a history of major depression and suicidal tendencies" that resulted in him being granted social security disability benefits from November 1981 – March 1993. (Tr. 19.)
[9] The ALJ notes that Simmons "was able to sustain substantial gainful activity, and apparently refrain from criminal sexual activity, from 1993-1996 . . ." (Tr. 21.)
[10] Episodes of decompensation are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(4).

other things, "[t]he past history of the inmate; The conduct of the inmate during confinement; *The current mental condition of the inmate; [and] Psychological reports*." (Tr. 820.) (emphasis added). Furthermore, in contrast to the ALJ's findings, Simmons' interview attitude was at times deemed "inappropriate." (Tr. 821, 852.) He was also "negative, hostile, and defensive . . . and highly suspicious of the motives of others," thus showing signs of decompensation. (Tr. 822.)

In explaining her reasoning, the ALJ must consider all relevant evidence. *Cotter*, 642 F.2d at 706 (explaining that ALJ must take into account all evidence in the record). The ALJ has "a great deal of discretion in determining what weight to accord [. . .] evidence." *Schneider v. Astrue*, No. 08-256 Erie, 2009 WL 4262095, at *8 (W.D. Pa. Nov. 24, 2009); *see also* 20 C.F.R. § 404.1527(d) (explaining how the ALJ must weigh medical opinions). If pieces of evidence conflict, the ALJ has the discretion to choose between them. *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ must offer an explanation as to why she rejected some evidence and accepted other evidence. *Walker v. Comm'r of Social Sec.*, 61 Fed. App'x 787, 789 (3d Cir. 2003) ("[a]n ALJ is required to review the evidence presented and explain why he rejects probative conflicting evidence"); *Cotter*, 642 F.2d at 705 (" . . . we need from the ALJ not only an expression of the evidence s/he considered . . . but also some indication of the evidence which was rejected"); *Snee v. Sec'y of Health and Human Servs.*, 660 F.Supp. 736, 739 (D.N.J. 1987) ("[t]he ALJ's responsibility is to analyze all the evidence and to provide adequate explanations when disregarding portions of it. . . . The ALJ should also indicate any . . . evidence that was rejected, along with the reasons for the rejection"). In her opinion, the ALJ gives no reason for rejecting Simmons' argument, and fails to discuss probative evidence in the record that Simmons' commitment was due to mental illness. (*See* Tr. 820.)

Secondly, the ALJ failed to address the last two criteria of 12.04, Section C, altogether – specifically, whether Plaintiff's disorder has resulted in such a marginal adjustment that a change in Plaintiff's environment would cause decompensation and whether Plaintiff was unable to function outside a highly supportive living arrangement. Once again, the record is full of evidence supporting Plaintiff's argument which the ALJ failed to consider. Examinations reveal Simmons' institutional adjustment and institutional functioning as fair and his institutional programming as poor. (Tr. 822-3.) Furthermore, he has a history of failed relationships. (Tr. 1105.) For example, the State Parole Board's December 12, 2000 referral for civil psychiatric commitment states that Simmons was "in need of continued supervision and treatment after the expiration of his . . . maximum date of incarceration . . . due to an unresolved mental illness." (Tr. 820.) Additionally, a psychological test administered on December 10, 2001, indicates that he was "chronically psychologically maladjusted. . . . An individual with this profile is usually diagnosed with a severe personality disorder such as Antisocial or Paranoid Personality disorder." (Tr. 1127.) Plaintiff has also been committed to a special treatment facility for sex offenders since November 27, 2001 where he is required to attend therapy sessions. (Tr. 42, 318, 820, 1100.)

Finally, in support of her decision, the ALJ noted that Plaintiff admitted he could concentrate and get along with others and thus she concluded he could do basic work. (Tr. 165-66.) However, once again the ALJ considered some evidence and ignored others. Significantly, psychological reports indicate Simmons' outward statements and affect cannot be trusted. (Tr. 1123.) Additionally, Simmons has a long "history of occupational difficulties." (Tr. 1120.) His repeated diagnosis as a Sexually Violent Predator and his commitment to the Special Treatment Unit seems to fit the requirement that he show "1 or more years' inability to function outside a

highly supportive living arrangement, with an indication of continued need for such arrangement." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.04. The ALJ failed to consider this evidence and failed to discuss its application to the criteria contained in section 12.04 Part C. These failures necessitate remand.

### 2. The ALJ Erred in Failing to Include Questions Regarding Plaintiff's Mental Impairment in the Vocational Expert Hypothetical.

Plaintiff argues that Simmons' mental impairments should have been included in the hypothetical questions given to the vocational expert. (Pl.'s Br. 19, 30; Pl.'s Reply Br. 6-7.) It is well-settled that hypotheticals given to a vocational expert "must reflect all of a claimant's impairments . . . ." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). A vocational expert's testimony cannot be considered substantial evidence unless "the question[s] accurately portray[] the claimant's individual physical and mental impairments." *Burns v. Banhart*, 312 F.3d 113, 123 (3d Cir. 2002) (quoting *Podedworny*, 745 F.2d at 218 (3d Cir. 1984); *see also Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (holding that the vocational expert's testimony cannot be considered unless it has "evaluated claimant's particular impairments as contained in the record"). Moreover, the ALJ must sufficiently describe all of the relevant impairments. *Thedford v. Comm'r of Soc. Sec.*, Civ. No. 07-1407, 2008 WL 5377777, at *4-6 (D.N.J. Dec. 19, 2008) (holding that when ALJ concluded that claimant suffered from a severe mood disorder, the word "depression" was an insufficient description of Plaintiff's mental impairment).

Nevertheless, it is not required that a vocational expert be informed of *every* alleged impairment. *Rutherford*, 399 F.3d at 554 (interpreting *Burns* to say "[w]e do not require an ALJ to submit to the vocational expert every impairment alleged by a claimant") (emphasis removed). The ALJ need only include those impairments that have been determined to affect Plaintiff's

17

ability to work. *Covone v. Comm'r of Soc. Sec.*, 142 F. App'x 585, 587 (3d Cir. 2005) ("*Burns* requires that a hypothetical include all of the claimant's credibly established limitations, but does not require that the vocational expert be apprised of limitations which have been determined not to affect the claimant's [residual functional capacity]"); *Rutherford*, 399 F.3d at 554 (the vocational expert need only be informed of "medically established" or "credibly established limitations") (emphasis removed).[11]

The ALJ's residual functional capacity assessment concluded that Plaintiff had severe mental impairments that affected his ability to work insofar as that Plaintiff could not come in frequent contact with the public or interact with minors. (Tr. 16-17.) However, the ALJ did not include this limitation in the vocational expert hypotheticals.[12] Because the ALJ concluded Simmons' mental impairment affected his residual functional capacity, her failure to include this limitation in the hypothetical was incorrect and must be vacated. *See*, *e.g.*, *Podedworny*, 745 F.2d at 219 (insufficient hypotheticals necessitate remand); *Wallace v. Sec'y of Health and Human Servs.,* 722 F.2d 1150, 1155 (3d Cir. 1983) (remanding because vocational expert hypotheticals "did not accurately portray the nature or extent of [Plaintiff's] impairment . . ."); *Thedford*, 2008 WL 5377777, at *4 (holding that "great specificity is required when an ALJ

---

[11] *Rutherford* summarizes guidelines as to whether a limitation is credibly established: "Limitations that are medically supported and otherwise uncontroverted in the record, but that are not included in the hypothetical question posed to the expert, preclude reliance on the expert's response. Relatedly, the ALJ may not substitute his or her own expertise to refute such record evidence. Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible - the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason. Finally, limitations that are asserted by the claimant but that lack objective medical support may possibly be considered nonetheless credible. In that respect the ALJ can reject such a limitation if there is conflicting evidence in the record, but should not reject a claimed symptom that is related to an impairment and is consistent with the medical record simply because there is no objective medical evidence to support it." *Rutherford*, 399 F.3d at 554, (internal citations and quotations omitted).

[12] Plaintiff also asserts that the ALJ erred in not including Plaintiff's "severe mental impairments and the fact that the plaintiff has been civilly committed by the State of New Jersey" in his residual functional capacity assessment. (Pl.'s Br. 30.) This Court does not address these arguments.

incorporates a claimant's mental or physical limitations into a hypothetical") (quoting *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004)) (internal quotations omitted).

## CONCLUSION

For the reasons stated above, the ALJ's decision is VACATED and REMANDED for further proceedings consistent with this opinion.

**SO ORDERED.**

s/ Susan D. Wigenton
**Susan D. Wigenton, U.S.D.J.**